IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KEITH A. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV-08-382-N-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| ELAINE SAVAGE, TONY | ) | |
| INGRAHM, and KEVIN DUNTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are cross motions for summary judgment, a motion for leave to file a late response and related motion to grant summary judgment based on a failure to respond, and a motion to strike pleadings.  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

MEMORANDUM ORDER - 1

## BACKGROUND

Plaintiff Keith Brown ("Brown") filed his civil rights Complaint in September of 2008. Dkt. 1. The Court conducted an initial review of the Complaint and determined Brown could proceed with his false arrest and false imprisonment claims against Bonner County's Sheriff's Detective Tony Ingram ("Ingram") and Federal Bureau of Investigations ("FBI") Special Agent Kevin Dunton ("Dunton"). Dkt. 5. All other claims were dismissed by the Court. *Id.* The claims against Ingram are pursuant to 42 U.S.C. § 1983 and the claims against Dunton are pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) which is analogous to § 1983 claims for federal actors.

The facts are generally undisputed. On or about February 5, 2007, Bonner County Sheriff's office responded to notification of an abandoned vehicle. The abandoned vehicle was determined to belong to Mr. Leslie Breaw ("Breaw"). The investigating officers were concerned about the status of Breaw as it was winter and the temperatures were cold and there were numerous valuable items in the abandoned vehicle as well as empty beer cans and the keys to the vehicle were clipped to the truck.

Ingram was the detective working with other sheriff's office deputies to try to figure out what had happened to Breaw. They went to the address on file with the U.S. Post Office for Breaw and entered the two residences located at the address in order to conduct a welfare check on Breaw. No one answered at the first house and when officers entered the residence they determined based on mail and other items located in the house that the residence was

MEMORANDUM ORDER - 2

not Breaw's but the residence of Keith and Tyrah's Brown and Rebekah Harding (Tyrah Brown's mother). So the officers left the residence and went next to the house next door. No one answered. The officers entered and determined it was Breaw's residence, but it did not appear that anyone had been home for a period of time. The officers talked with neighbors who informed them they had not seen Breaw for at least a week or more and one neighbor said they had noticed the Browns packing their vehicle in a hurried manner and had not seen the Browns since then.

Detective Ingram talked to Phyllis Scott, Breaw's mother, and she agreed her son was missing as he had told her he would get back to her after their phone call about Breaw coming to visit. The phone call occurred on or about January 14-15, 2007 and she had not heard from him since then.

Ingram also got subpoenas from the court for the financial records from Breaw's banks. First State Bank indicated he had a balance of $1,100 and that there had been no activity since January 15, 2007. Ingram had noticed a missing check (and carbon duplicate) in the checkbook found in the truck, but that check number had not cleared the bank.

Panhandle State Bank confirmed the last account activity was on January 25, 2007 and there had been several uses of the debit card associated with the account. Ingram investigated the debit charges from Mac's Gas and Grocery in the Coolin area on January 18, 2007. The surveillance video from the store revealed it was Keith Brown ("Brown") who had used the debit card on January 18, 2007 for gas and other items. Ingram made the

MEMORANDUM ORDER - 3

determination it was Keith Brown based on a booking photo of Brown from a prior arrest which he compared to the video.

The debit applied by the bank on January 25th was for The Tamarack store in Priest Lake for $92.37 and was for diesel fuel at 1246 p.m.  A receipt was found that tied to this amount in the personal items of Breaw.  The store owners confirmed they had not recently seen Breaw.

Ingram was also aware that Breaw's dogs were found unfed and running loose.  The investigation revealed that a clerk at Coolin Corners bar-restaurant knew Breaw, as well as Keith and Tyrah Brown and they had been in for burgers and beer a couple of weeks ago. The clerk indicated Breaw was a regular but had not seen him since the last visit a couple of weeks ago.

Late on February 6, 2007, the prosecutor decided Ingram had enough evidence to establish probable cause to request an arrest warrant for Brown's use of Breaw's debit card and for a search warrant of Breaw's and the Browns' residences.  Ingram testified for the warrants before state court Magistrate Judge Barbara Buchanan.  Judge Buchanan was familiar with Keith Brown and found there was probable cause to issue an arrest warrant and to issue the search warrants on the two residences.

After the arrest warrant and search warrants were issued, the investigation continued. Ingram discovered that Brown had a friendship with Breaw and that Rebekah Harding was Tyrah Brown's mother and had been living with the Browns.  One person recalled Breaw

MEMORANDUM ORDER - 4

and Brown having a disagreement.  There was a report that Keith and Tyrah Brown had personally collected rent from Breaw's renters and this appeared to be without Breaw's consent when a renter told officers Breaw called one renter asking why they had not paid their rent and they told him they had paid the rent to Keith and Tyrah Brown.

A moving truck showed up to move the contents of the Brown's house.  Tyrah Brown had not come back to work to get her paycheck.  Ingram had a phone conversation with Rebekah Harding who was in Montana and she indicated statements were made by the Browns indicating they thought Breaw had a lot of money (his mother had confirmed Breaw had received a large inheritance) and that they felt like they would not get a fair shake from the system and they decided to run.  Rebekah Harding would not disclose where the Browns were located.  It was also discovered that an escrow account of Breaw's had more than $50,000 removed by the Browns.  Other restaurant owners indicated Breaw was a regular but had not been seen since January.

On February 21, 2007, Agent Dunton requested a federal Unlawful Flee to Avoid Prosecution ("UFAP") warrant from United States Magistrate Judge Mikel H. Williams based on Dunton's belief from information provided by the Bonner County Sheriff's office that Brown had fled the state to avoid prosecution on the alleged unlawful use of Breaw's debit card.  A UFAP warrant was granted on that same day.[1]

---

[1]The Court takes judicial notice of its own court records in *United States v. Brown*, 07-MJ-6188-MHW, Dkt. 2.

MEMORANDUM ORDER - 5

Sometime on March 19, 2007, a body was found in the woods. At around noon on March 20, 2007, Brown was arrested in Florida on the federal UFAP warrant and was transferred to Idaho.  The discovery of Brown in Florida was based on independent information from a Montana car dealer being asked by Tyrah Brown to mail something to her at a Florida address.  It is unclear from the record when Brown was returned on the warrant to Idaho.

The charges for grand theft in criminal case number 2007-0621involving the debit card were dismissed on May 2, 2007.  On or about May 3, 2007, Brown was charged in state criminal case no. CRF-2007-2454 with the murder in the first degree of Breaw, grand theft by possession of stolen property involving $56,000 in an escrow account, and being a felon in possession of a firearm.  Brown's counsel in state court filed a motion to suppress evidence arguing there was no probable cause for the arrest warrant on February 6, 2007. The state district court ruled probable cause existed for the warrant for arrest and, in the alternative, Brown could have been arrested without a warrant.

Brown pled guilty to voluntary manslaughter and aiding and abetting grand theft.  An Amended Judgment was filed On November 15, 2010 in state court indicating Brown was sentenced to 15 years (10 years fixed) on the manslaughter count and 5 years fixed on the grand theft charge, to run concurrent.  The Court finds the criminal case is on appeal according to the Idaho Supreme Court Data Repository[2] ("Repository") and the Court takes

---

[2]https://www.idcourts.us/repository/caseHistory.do?(visited on September 19, 2011).

MEMORANDUM ORDER - 6

judicial notice of the certain facts from the Repository.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2010) (explaining that court may take judicial notice of matters of public record).

It is unclear from the record when the body in the woods located on March 19, 2007 was identified as Breaw's, but Plaintiff claims Breaw's debit card (that Ingram thought had been unlawfully used by Brown to justify the arrest warrant for grand theft) was found on the body of Breaw.  Brown claims Ingram and Dunton had a duty to go back to the magistrate judges who issued the warrants and inform them that probable cause regarding the grand theft charges related to alleged unlawful use of the debit card no longer existed when: 1) the debit card was found on Breaw; 2) additional information proved Brown had used the debit card of Breaw's with permission on other occasions; and 3) Breaw used his debit card after the surveillance film of Brown buying gas and other items at Mac's so the assumption by officers should have been Brown had permission to use the debit card earlier in January at Macs Gas and Grocery.  Brown also argues Ingram and Dunton had a duty to conduct further investigations before seeking warrants and that once exculpatory evidence was discovered regarding the grand theft charge, Ingram and Dunton should have requested the warrants be vacated by the issuing judges.  Brown claims Ingram and Dunton violated his constitutional rights to be free from an unlawful arrest and false imprisonment based on the alleged unlawful arrest.  Defendants deny they violated Plaintiff's constitutional rights.

MEMORANDUM ORDER - 7

**Motion to Strike Pleadings**

Brown seeks to have the Court strike the pleadings filed by Seann Mumford claiming he is not an attorney of record for Bonner County.  Mr. Mumford is associated with Mr. Erbland and both attorneys are attorneys of record in this matter.  Furthermore, another attorney in the firm in which Mr. Erbland practices is allowed to sign pleadings on behalf of Mr. Erbland.  Accordingly, the motion to strike is denied.

**Motion to Grant Summary Judgment Against Defendant Ingram for Failure to Respond and Defendant Ingram's Motion for Leave to File a Memorandum Opposing Plaintiff's Motion for Summary Judgment**

Plaintiff seeks the Court to grant his motion for summary judgment since Defendant Ingram did not timely file his response to Plaintiff's motions.  Defendant Ingram also seeks leave of the Court to file his response to Plaintiff's motion for summary judgment less than twenty-four hours after the deadline.  The Court denies Plaintiff's motion as a court cannot grant a motion for summary judgment merely because the opposing party failed to respond to the motion.  *See Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet the burden of demonstrating absence of genuine issue for trial).  Accordingly, the Court will evaluate the motion for summary judgment on the merits and deny the Plaintiff's request to

summarily grant his motion summary judgment due to an untimely response by Defendant Ingram.

District Courts may establish local rules of procedure that have the force of law.  Fed. R. Civ. P. 83(a)(1).  Attorneys practicing in a federal district court are charged with knowledge of the local rules the same as they are charged with knowledge of the Fed. R. Civ. P.  Local Rule 7.1 controls when a response must be filed to a motion.  Pursuant to D. Idaho L. Civ. R. 7.1(c), the responding party must file its response within twenty-one days after service upon the party of the motion and memorandum by the moving party.[3] The Local Rules provide that failure to respond to a motion may be deemed consent to the granting of the motion.  D. Idaho L. Civ. R. 7.1(f).   Moreover, pursuant to Fed. R. Civ. P. 6(d), three days are added to the response period of twenty-one days, so the response in this case (as confirmed by the deadline on the docket sheet for Plaintiff's motion for summary judgment, Dkt. 34) was due on January 13, 2011.   The motion for leave to file a response was filed on January 14, 2011, so Defendant's request to file one day late is an accurate representation.

Further, Plaintiff has not shown he suffered any prejudice from the request by Defendant Ingram to file his response one day late.  The Court notes Ingram had filed his own

---

[3]D. Id. L. Civ. R. 7.1(c)(1) provides in part:

> The responding party <u>must</u> serve and file a response brief . . . . The responding parties must serve and file with the response brief any affidavits, copies of all photographs, and documentary evidence on which the responding party intends to rely.  (Emphasis added.)

cross motion for summary judgment on January 12, 2011 (Dkt. 38) which was well before the motions deadline of May 31, 2011 per the scheduling order, Dkt. 32.  So Ingram was not avoiding addressing the Plaintiff's allegations and the one day extension for the response is in the interests of justice in resolving the pending motions after hearing from all parties, not just one party. Therefore, the Court will grant Ingram's motion for leave to file a late response and will consider the four page response attached to the motion for leave as his response to Plaintiff's motion for summary judgment.

## Motions for Summary Judgment

### 1.  Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element,

"there can be no `genuine issue of material fact,' since a complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Id.* at 323.[4]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary

judgment, must be both "material" and "genuine."  An issue is "material" if it affects the

outcome of the litigation.  An issue, before it may be considered "genuine," must be

established by "sufficient evidence supporting the claimed factual dispute . . . to require a

jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*,

523 F.2d 461, 464 (1st Cir. 1975) (*quoting First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S.

253, 289 (1968)).  The Ninth Circuit cases are in accord.  *See, e.g., British Motor Car Distrib.*

*v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment,

a party

> (1) must make a showing sufficient to establish a genuine issue of fact with
> respect to any element for which it bears the burden of proof; (2) must show that
> there is an issue that may reasonably be resolved in favor of either party; and (3)
> must come forward with more persuasive evidence than would otherwise be

---

[4] *See also*, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided
> in this rule, an adverse party may not rest upon the mere allegations or
> denials of the adverse party's pleadings, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If the adverse party does not
> so respond, summary judgment, if appropriate, shall be entered against the
> adverse party.

MEMORANDUM ORDER - 11

necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## 2.  42 U.S.C. § 1983 or *Bivens* and Qualified Immunity

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

*Id.* In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor that deprived them of their rights acted under color of law and (2) the action actually deprived them of a constitutional right.  In the case of alleged unlawful acts by a federal law enforcement officer, the claims are brought under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The analysis is basically the same for a § 1983 action or a *Bivens* claim.

In this case, the first requirement is not disputed by the parties. Bonner County sheriffs' deputies and detectives and FBI agents carrying out their duties investigating a

MEMORANDUM ORDER - 12

missing person and/or an alleged crime of grand theft by a third party, or arresting a person pursuant to a warrant are acting under "color of law." Thus, it is the second requirement for a civil rights claim that is at issue here.  Plaintiff contends this Fourth Amendment rights regarding false arrest and false imprisonment were violated.  Defendants assert that no constitutional right was violated and even if a Fourth Amendment right was violated the officers are entitled to qualified immunity.

While § 1983 provides a cause of action against police officers for constitutional violations that they might have committed, they are also entitled to qualified immunity from § 1983 and *Bivens* claims. Qualified immunity operates to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231.  "Qualified immunity operates to ensure that before they [law enforcement officers] are subject to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The qualified immunity analysis of whether an officer performed their duties reasonably, turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted).

MEMORANDUM ORDER - 13

The court in *Pearson* rejected the mandatory two-step approach that it had announced in *Saucier v. Katz*, 533 U.S. 194 (2001). *Pearson* at 236. That approach had required courts to first decide if the defendant's "conduct violated a constitutional right" then decide whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Courts are now free to decide either question in whatever order is most appropriate given the circumstances.

**3.  Claims Against Ingram**

    **A.  False Arrest**

Brown argues the officers investigating the disappearance of Breau withheld facts before the magistrate judge and the arrest warrant was issued based on false, incomplete or misleading information.  As to the use of the debit card, Brown argues he had permission, and did not forge Breau's name but used his own.  The question is not what actually happened with the debit card usage, but did the facts known to law enforcement and disclosed to the state magistrate judge on February 6, 2007 support a finding of probable cause for the issuance of a warrant on grand theft charges related to what law enforcement believed was fraudulent use of a financial access card.

The elements of § 1983 case grounded upon the Fourth Amendment for false arrest are as follows: "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in

MEMORANDUM ORDER - 14

applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 7878 (3rd. Cir. 2000)(internal citation and punctuation omitted).

"The Fourth Amendment requires that arrest warrants 'be based upon probable cause, supported by Oath or affirmation." *Katrina v. Fletcher*, 522 U.S. 118, 129 (1997) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975)).  Probable cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing and offense." *Gerstein*, 420 U.S. at 111. Where an arrest is made pursuant to a warrant, the arrest violates the Fourth Amendment if "a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 35 (1986).

In this case, the Court has the opportunity to consider the transcript including the testimony of Ingram in the hearing before the state court magistrate judge who issued the search and arrest warrants related to the grand theft allegations in CR 2007-621, the relevant written police reports, portions of the transcript of the *Franks* hearing before the state district court in CR 2007-2754, portions of the deposition of Ingram (the complete deposition was provided to the state district court in consideration of the *Franks* hearing).

Arguably, this issue has already been decided by the state court when it issued its opinion after the *Franks* hearing. This Court agrees with the state district judge that at the

MEMORANDUM ORDER - 15

time of the request for the search and arrest warrants related to the alleged unlawful use of the credit/debit card on February 6, 2007, the Court finds there is no evidence to support that "(1) that Ingram knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant; or (2) that Ingram's alleged false statements or omissions were material, or necessary, to the finding of probable cause."

Applying 20/20 hindsight, the Court acknowledges Plaintiff may be correct in his assertion that certain facts were misconstrued by law enforcement, but when the request for warrants was made to the magistrate judge, reasonable inferences from the known facts supported a finding of probable cause to issue the arrest warrant.  Moreover, at the *Franks* hearing the state district judge concluded "[although there is evidence that another officer had information that Breau had used the [credit/debit] card after the defendant used it, there is no evidence that, at the warrant hearing, Ingram knew about Breau's subsequent use."  Moreover, although Breau may have used his credit/debit card after Brown used the card, there was no evidence that the use by Brown was authorized by Breau on the date he used it at Macs.  Therefore, the Court finds there is no evidence Ingram knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for warrants.

In addition to the arrest warrant for grand theft, the investigating officers acknowledged they wanted Brown found for questioning regarding the missing person

MEMORANDUM ORDER - 16

investigation regarding Breaw.  The magistrate judge who issued the warrants stated on the record she also wanted to find out about Brown's knowledge regarding the circumstances of Breaw's disappearance.   Just because a secondary reason exists that law enforcement officers want to interview a person of interest does not mean a valid arrest warrant supported by probable cause cannot legally be issued.

So the next question becomes, did Ingram withhold information and/or fail to return to the issuing magistrate judge after a body was found in the woods on March 19, 2007?  Again, the answer is no.  It is undisputed that although some of the law enforcement officers thought the body found was that of Breaw, the determination by the examiner as to the identification was not made until after the arrest of Plaintiff on March 20, 2007 at around 12:30 Eastern Time.

Plaintiff maintains Ingram knew that Breaw had authorized prior uses of his debit card by Brown, therefore, the known facts did not support a finding of probable cause in March 2007 before Brown was arrested in Florida.  While it is clear from the record that law enforcement wanted to question Brown about Breaw's disappearance, the discovery of the body with the debit card does not as a matter of law establish that the probable cause for the arrest of Brown on the grand theft charges no longer existed.  The facts regarding the late January debit card usage differed from the previous authorized uses.  Brown and Tyrah had allegedly left in a hurry, Breaw had been found dead, Tyrah left without picking up her last check, statements made to Rebekah Harding that they fled because they did not

MEMORANDUM ORDER - 17

think they would get a fair shake.  All these facts result in probable cause for the grand theft charges remaining valid even though the debit card had been located.  Furthermore, the escrow account withdrawals by the Browns were discovered and that supported a probable cause inference that other financial transactions may have been improper.

The threshold for probable cause is not high and exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing and offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). In this case, the record is clear the officer investigation of the missing person and the grand theft charges continued after the search warrants were issued.  Law enforcement had facts and circumstances that warranted a prudent person into believing Keith and Tyrah Brown had committed some wrongful uses of the debit card, the rent collected monies and monies in a certain escrow account.  Brown has provided no evidence that the additional investigation and discovery on the pending grand theft charges and the newly discovered escrow account withdrawals were ended after Brown's arrest.  The record supports that further investigation was necessary and completed on the overall investigation of Brown's involvement with Breaw's finances and his death.   Therefore, while the investigation continued and until the charges were dismissed the Court finds there is no evidence of an unlawful arrest or a duty on the officer to return to the magistrate judge who issued the arrest warrant.

MEMORANDUM ORDER - 18

At some point the prosecutor determined he would dismiss the grand theft charges in CR2007-0621 and proceed instead on the murder and grand theft charges in CR2007-2454. Again, the motion to dismiss the charges in s CR2007-0621 does not establish as a matter of law that false or misleading statements had been made to the magistrate judge or that probable cause no longer existed on the charges.

For all the above reasons, Brown's conclusory statements and theories are not supported by the facts.  When the nonmoving party relies only on its own declarations to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993).  Brown has not established a genuine issue of material fact regarding that (1) Ingram knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrants; or (2) that Ingram's alleged false statements or omissions were material, or necessary, to the finding of probable cause."  The claim for false arrest must be dismissed.

Alternatively, the Court finds that Ingram would be entitled to qualified immunity for his actions in testifying for a search and arrest warrant in CR2007-00621.   While it is true that Ingram may not have been aware of all the facts gathered by all the officers involved in investigating the disappearance of Breaw and the use of his debit card, the record is undisputed that a reasonable officer knowing the facts Ingram knew and testified

about would have believed his testimony to the state magistrate judge was not a violation of clearly established law. *Wilson v. Layne*, 526 U.S. 603, 614 (1999)

## B. False Imprisonment

Where a detention occurs as the result of a false arrest, then a false imprisonment claim arises under the Fourteenth Amendment protection against deprivations of liberty without due process. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Under § 1983, a plaintiff must meet the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Oretega v. Christian*. 85 F.3d 1521, 1526 (11th Cir. 1996). The elements of common law false imprisonment are: (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm. *Ortega* at 1526, n.2. The plaintiff also needs to show that the persons detaining him were involved in or aware of the wrongful nature of the arrest. *Id.* at 1526-27.

In this case, the Court has determined the claim for false arrest must be dismissed so the imprisonment associated with the arrest until the dismissal of the charges was not false imprisonment. Stated another way, because the finding of probable cause was proper, law enforcement continued to have a basis to keep Brown in custody on the pending charges for grand theft and the claim for a violation of constitutional rights on this basis is denied.

MEMORANDUM ORDER - 20

Alternatively, the Court would find that Ingram would be entitled to qualified immunity as his actions did not violate clearly established constitutional rights of which a reasonable person would have known.  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Stated another way, a reasonable officer knowing all that Ingram knew would not have thought probable cause did not exist for the grand theft charges and because probable cause existed, Brown was not falsely imprisoned.

## 4.  Claims Against Dunton

In general, Plaintiff claims Dunton violated his rights by providing false information to, and withholding exculpatory information from, the federal magistrate judge in connection with the request for the UFAP warrant in February 2007.

### A.  False Arrest

The Court begins with the undisputed fact that Agent Dunton did not arrest Plaintiff.  Plaintiff was arrested in Florida by other officers of the FBI.  Vicarious liability ( attempting to hold Dunton liable for the actions of other unnamed FBI agents) is not applicable to *Bivens* actions.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1948 (2009).  These arresting FBI officers are not named defendants in this case.  Therefore, it is legally impossible for Dunton to be found to have falsely arrested Plaintiff and the claim must be dismissed.

MEMORANDUM ORDER - 21

Second, a plaintiff challenging the validity of an arrest warrant by alleging an officer submitted false testimony or a false affidavit to a court must satisfy a two-part test based on *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978): 1) the officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and 2) that such statements or omissions are material, or necessary, to the finding of probable cause.   In applying for warrants, officers are "entitled to rely on information obtained from fellow law enforcement officers."  *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005).  "[U]nder the 'collective knowledge doctrine,' probable cause may be based on 'the collective knowledge of all the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom.'" *Id. (citing United States v. Jensen*, 425 F.3d 698, 705(9th Cir. 2005)).

In this case, the Complaint for the UFAP warrant on February 21, 2007 stated:

> On February 7, 2007, a warrant was issued by the First Judicial District of the State of Idaho for the County of Bonner, Idaho, charging Keith A. Brown with Grand Theft. Det. Tony Ingram from Bonner County has learned that Brown's neighbors have not seen him [for] several days and believed that Brown has packed all of his belongings and left the area. Det. Ingram has also received three sightings of Brown in the St. Regis, Montana area. The investigation has revealed that Brown has several ties to Montana, Oregon, and Washington. Repeated attempts to locate Brown in Bonner County have failed. It is believed that Brown has fled the State of Idaho to avoid prosecution.

Plaintiff's Complaint at 13.

MEMORANDUM ORDER - 22

Brown claims Dunton should have done a further investigation instead of just relying on what he was told by local law enforcement officers, but the law does not require Dunton to conduct an independent investigation. True, additional information was discovered after the arrest warrant from the state court was obtained, but a reasonable officer could have interpreted the additional facts and circumstances (i.e., Brown and Tyrah leaving in a hurry, Tyrah not coming back for her paycheck from her employer, statements to her mother that they fled thinking they would not get a fair shake) all support that the additional facts did not eviscerate the probable cause finding even though there was some evidence that Brown had used the debit card in the past with Breaw's authorization.

The standard for probable cause for a UFAP warrant is different and significantly easier to meet than the standard for the underlying crime. *Meuse v. Freeh*, 421 F. Supp.2d 365, 3690-70 (D. Mass. 2006).   This makes sense as the purpose of a UFAP is to permit federal law enforcement agents to apprehend state fugitives, not try them on the underlying state charges.  Probable case for a UFAP warrant may be established solely by the fact that a state arrest warrant has been issued. *Commonwealth v. Lewis*, 398 A. 2d 1016, 1018 (1979).  Applying this standard, the Court finds the Complaint adequately sets forth facts to support that Brown appears to have fled the State of Idaho to avoid prosecution.  The Court further finds none of the facts presented have been established to be not true or misleading due to omissions.  Finally, as discussed earlier, an officer is entitled to qualified

MEMORANDUM ORDER - 23

immunity if the officer's reliance on the information provided by Bonner County law enforcement officers was objectively reasonable.  *Motley* 432 F.3d 1072, 1082 (9th Cir. 2005).  For all these reasons, Dunton's motion for summary judgment on the claim of false arrest by Dunton must be granted.

### B. False Imprisonment

Because the Court finds there was no false arrest by Dunton, there can be no claim for false imprisonment.  The FBI returned Brown to Idaho and it was the local state charges of grand theft, not the UFAP warrant that resulted in Brown's detention until the grand theft charges were dismissed in May.  Accordingly, there is no genuine issue of material fact and this claim must also be dismissed.

### 5.  Conclusion

The Court finds Defendants are entitled to summary judgment as Plaintiff has failed to establish a genuine issue of material fact regarding the probable cause finding for the issuance of the state arrest warrant for grand theft.  Plaintiff has failed to satisfy the legal two requirements for false arrest.  Plaintiff's objections to the testimony by Ingram are primarily conclusory statements that Ingram's testimony was false.  The question is not whether Brown thinks there was probable cause to issue the warrants, but whether under the facts and circumstances known to the officer at the time the warrant was issued, the probable cause finding was lawful.  Some of Ingram's conclusions during the investigation may have been incorrect inferences, but that does not rise to the level of a constitutional

MEMORANDUM ORDER - 24

violation when the warrant was issued.  This ruling is also consistent with the state district court that held a *Franks* hearing on the same issues.  Finally, the Court has to consider the big picture and all the facts good and bad that were discovered after the warrant was issued that could continue to support a finding of probable cause.  In considering these undisputed facts, there was no duty for Ingram to return to the magistrate judge. Having found not false arrest by Ingram or Dunton, the claims for false imprisonment also fail.

Alternatively, the Court would find even if a constitutional violation had been put at issue with disputed facts, the Defendants would be entitled to qualified immunity for their actions in this case.

## Order

Being fully advised in the premises, the Court hereby orders:

1.  Plaintiff's Motion to Strike Pleadings (Dkt. 50) is DENIED.

2.  Plaintiff's Motion to Grant Summary Judgment Against Defendant Ingram for Failure to Respond (Dkt. 43) is DENIED.

3.  Defendant Ingram's Motion for Leave to File Memorandum Opposing Plaintiff's Motion for Summary Judgment (Dkt. 45) is GRANTED and the Court will consider the four page response attached as Exhibit A to the motion as Ingram's response to Plaintiff's motion for summary judgment filed nunc pro tunc as of January 14, 2011.

4.  Plaintiff's Motion for Summary Judgment (Dkt. 34) is DENIED.

MEMORANDUM ORDER - 25

5. Defendant Ingram's Motion for Summary Judgment (Dkt. 38) is GRANTED and all claims against Defendant Ingram are DISMISSED.

6. Defendant Dunton's Motion for Summary Judgment (Dkt. 35) is GRANTED and all claims against Defendant Dunton are DISMISSED.

DATED:  **September 30, 2011**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 26